IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


VICKIE L. SIMS                                                                                    PLAINTIFF


V.                                                                          CIVIL ACTION NO. 1:08CV272-SAA


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                               DEFENDANT


**MEMORANDUM OPINION**

Plaintiff Vickie L. Sims filed this appeal under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security's decision denying supplemental security income (SSI) benefits under Title XVI. The district court's jurisdiction over plaintiff's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636(c), both parties have consented to have a magistrate judge conduct all the proceedings in this case, the undersigned therefore has the authority to issue this opinion and the accompanying final judgment.


**BRIEF FACTUAL SUMMARY**

Plaintiff was born in 1968 and was 39 years old at the time of the hearing before the Administrative Law Judge. Tr. 24. She completed the 12th grade in school at the age of 20 having taken special education classes. Tr. 115, 159 - 160. Her application for SSI, filed on November 22, 2005, was denied both initially and on reconsideration. Tr. 11. A request for hearing was timely filed, and the hearing was held on October 23, 2007. See Tr. 21 - 42. Plaintiff

1

contends she is disabled due to Raynaud's disease, depression, thyroid problems, numbness, headaches, memory, dizziness, back pains, weakness, high blood pressure, frequent urination, blurred vision and leg cramps. Tr.108. In an opinion dated December 7, 2007, the ALJ found that plaintiff was not disabled as defined by the Social Security Act. After she was denied benefits, plaintiff was evaluated by a licenced psychologist, Glenn T. Ellis, at the request of her attorney. Tr. 161 - 163. Dr. Ellis administered the Wechsler Adult Intelligence Scale – Third Edition ("WAIS-III") and determined plaintiff has a verbal IQ of 66, a performance IQ of 59 and a full scale IQ score of 60. Tr. 161. This information was submitted to the Appeals Council on October 29, 2008 by counsel for the plaintiff in a request for reopening and reconsideration of the Council's August 28, 2008 denial. The Council denied plaintiff's request for further review on October 31, 2008. Tr. 1 - 2. The plaintiff timely appealed, and this case is now ripe for review.

## STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further stated that substantial evidence:

must do more than create a suspicion of the existence of the fact to be established,

but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, in Social Security disability review cases, where § 405(g) governs the standard of review, *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir.1964), the Fifth Circuit has held that appellate review is limited to two issues: (1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2001) *citing Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir.1994); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir.1992). This court may not overturn the Secretary's decision if it is supported by substantial evidence – "more than a mere scintilla" – and correctly applies the law. *Morris* at 745; *Anthony*, 954 F.2d at 292.

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining whether an individual is entitled to SSI benefits the Commissioner,

through the ALJ, must follow the five-step sequential evaluation process set out in 20 C.F.R. §416.920(a)(4). The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[1] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[2] Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[3] At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[4] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[5] At step five the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[6] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[7]

---

[1] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[2] 20 C.F.R. § 416.920 (2009).

[3] 20 C.F.R. § 416.920 (2009).

[4] 20 C.F.R. § 416.920(d) (2009).

[5] 20 C.F.R. § 416.920(e) (2009).

[6] 20 C.F.R § 416.920(f)(2009).

[7] *Muse*, 925 F.2d at 789.

In the instant case the ALJ found that the plaintiff suffered from depression, soft tissue rheumatism, headaches, hypertension and thyroid disease but that she was not disabled as defined by Title XVI of the Act. Tr. 13 - 17. More specifically, the ALJ determined that plaintiff was not entirely credible. Tr. 17-18. He noted that evidence in the record reveals numerous inconsistencies in the plaintiff's testimony, in her medical history as relayed to her physicians, in her stated abilities to perform activities of daily living and vocational abilities and that plaintiff was chronically non-compliant with medication prescribed to control or remedy her medical conditions. Tr. 18. After considering the evidence in the record, the ALJ found that plaintiff had the residual functional capacity ("RFC")

> to perform sedentary work except that she is limited to no more than occasional stooping, climbing and balancing; can never climb ladders, crouch, kneel or crawl; and must avoid cold temperatures, moving/dangerous machinery; and may be absent from work up to one or two days per month due to headaches." "Further, [plaintiff] is limited to the performance of simple tasks that do not require her to concentrate for more than two hours at a time and that require no more than occasional interaction with supervisors that give only minimal supervision" yet "[s]he is able to interact with co-workers and the general public and can get through a normal work week.

Tr. 17. Relying on the evidence in the record, including testimony of a vocational expert ("VE"), and considering plaintiff's age, education, her lack of transferrable job skills or past relevant work, the ALJ determined that there is work in the national economy which the plaintiff can perform, Tr. 19, and therefore is not disabled as defined by the Social Security Act. Tr. 20.

If the record in this action were the same as that considered by the ALJ, the court would unequivocally affirm. However, plaintiff's submission of subsequent IQ test results, deemed valid by the clinical psychologist who tested her, and his accompanying Medical Assessment bring into question whether plaintiff should be found to meet Listing 12.05.

5

## ISSUES ON APPEAL

Plaintiff asserts that the Appeals Council erred in failing to properly consider the new and material evidence of Dr. Ellis's report, including her IQ test scores and her high school transcript, and the ALJ erred because he (a) did not afford proper weight to the opinions of the plaintiff's treating and consulting physicians his RFC assessment and (b) did not find plaintiff disabled at step five of the sequential evaluation process. Docket 9, p.1.

## DISCUSSION

Substantial evidence is evidence that a reasonable mind would accept as adequate to support the decision. *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir.1993), citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The plaintiff argues that because the decisions of both the ALJ and the Appeals Counsel were unsupported by substantial evidence, this case must be remanded for further consideration. In reviewing the decision of the Commissioner, the court is limited to determining, without re-weighing the evidence, whether there was substantial evidence in the record as a whole to support the decision that the claimant is not under a "disability" as defined by the Social Security Act. 42 U.S.C. § 405(g); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir.1983). *See Green v. Schweiker*, 694 F.2d 108, 110 (5th Cir.1982), *cert. denied*, 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 357 (1983). Where substantial evidence supports the administrative finding, the court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with applicable statutes and regulations. *Hernandez v. Heckler*, 704 F.2d 857, 859 (5th Cir.1983). Of course, this standard of review is not a rubber stamp for the

Commissioner's decision. It involves more than a basic search for evidence supporting the findings of the Commissioner. The court must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting said findings. *Austin v. Shalala*, 994 F.2d at 1174, citing *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984). *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir.1984).

Appeals Council's Consideration of New Evidence

Dr. Glenn Ellis, Ph.D., evaluated plaintiff on October 13, 2008. As a part of his evaluation, Dr. Ellis administered the Wechsler Adult Intelligence Scale-III, as to which plaintiff attained a Verbal IQ score of 66, a Performance IQ score of 59 and a full scale IQ score of 60. Relying on *Durden v. Astrue*, 586 F.Supp.2d 828 (S.D. Tex 2008), plaintiff argues that these IQ test scores and her school transcript evidencing poor grades, special education courses and ultimately the receipt of a special education certificate of graduation at age twenty, provide evidence sufficient to mandate a finding that plaintiff meets the requirements of Listing 12.05B or 12.05C. *Durden*, says plaintiff, supports her claim that she met the Listing despite the fact that Dr. Ellis did not test her until over eight months after the ALJ's decision – and when she was 40 years old – because she would have had the same IQ score before she turned 22 years of age

Listing 12.05(B), requires a "valid verbal, performance, or full scale IQ of 59 or less;. . . ." 20 C.F.R. Part 404, Sub. Pt. P, App. 1 § 12.05(B). Listing 12.05(C) requires an I.Q. score of 60 through 70 and a "physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id* at §12.05(C). "[W]here more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are

7

provided, in the Weschler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(D)(6)(c). Plaintiff's lowest score was her performance score of 59, which appears to meet the severity criteria in 12.05(B). However this score was obtained when the plaintiff was 40 years old. Listing 12.05 requires that the subaverage general intelligence and deficits in adaptive behavior initially manifest during the developmental period which is before age 22. 20 C.F.R. Part 404, Sub. Pt. P, App. 1 §12.05.

When new evidence becomes available after the ALJ's decision, and there is a reasonable likelihood that the new evidence could change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Govea v. Astrue*, 2008 WL 2952343, *4 (W.D.Tex.,2008), citing *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir.1995). Evidence is not considered "material" if it relates to a disability or to the deterioration of a previously non-disabling condition which occurs outside of or after the period for which benefits are properly sought. *Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir.1994). If, however, new and material evidence was properly presented to and considered by the Appeals Council, this court must consider that evidence as part of the entire record, even if the Appeals Council denied review. *Rodriguez v. Barnhart,* 252 F.Supp.2d 329, 335 (S.D.Tex.2003).

The Appeals Council, by letter dated October 31, 2008, denied the request to reopen and reconsider plaintiff's case in light of the new evidence stating:

> The representative argues that the severity of the claimant's mental impairment meets in severity the requirements of listings 12.05B and C. However the medical evidence of record fails to support findings indicative of subaverage general intelligence functioning with deficits in adaptive behavior initially manifested during claimant's developmental period (prior to claimant's 22nd birthday). Additionally the claimant has, in fact, demonstrated the

ability to engage in substantial gainful activity.

Tr. 1.

In *Durden*, the United States District Court for the Southern District of Texas held that the fact that a plaintiff did not have IQ scores evidencing significantly subaverage intellectual functioning within the developmental period did not preclude a finding of mental retardation, 586 F.Supp. at 833, and even though an individual with mild mental retardation may be able to hold an unskilled job despite her intellectual limitations, additional physical impairments may preclude her ability to work as recognized by Listing 12.05(C). *Id.* at 838.

In this case the ALJ found significant evidence of malingering by the plaintiff, multiple inconsistencies in her testimony and explanations of her medical history to physicians and frequent exaggeration of symptoms. *See, e.g.* Tr. 351 - 354, Report of Dr. James R. Lane, III, "Ms. Sims acted overly dramatic and appeared to exaggerate on a number of occasions. In addition, she had a tendency to answer questions in an irritable and defensive manner. Finally she appeared to malinger on IQ-related items. Also, there are some important contradictions between her statements during this evaluation and Dr. Hardy's notes from CCS." The ALJ analyzed the plaintiff's credibility under Social Security Rulings ("SSR") 96-7p and 96-4p and 20 C.F.R. 416.929 and found her to be less than credible. Plaintiff's incredibility and the fact that her IQ test scores were obtained 18 years after her 22nd birthday, even in light of her record in high school as reflected by her transcript, may not be sufficient to presumptively establish her IQ during the developmental period.

Without the IQ test scores, there is little definitive evidence to support plaintiff's argument that she meets the stringent requirements of the Listing. *Sullivan v. Zebley*, 493 U.S.

9

521, 530 (1990). However, "[a]bsent evidence of a sudden trauma that could cause retardation, an IQ test creates a rebuttable presumption of a fairly constant IQ throughout the life of a claimant. SOCIAL SECURITY LP § 42:134; *Durden*, 586 F.Supp2d at 833. *See also Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir.2001) (presumption "that IQ remains fairly constant throughout life"); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir.2001) ( presumption that IQ remains stable over time absent evidence of change in a claimant's intellectual functioning"); *Guzman v. Bowen*, 801 F.2d 273, 276-75 (7th Cir.1986) (presumption that low IQ existed before first IQ test); *Rowell v. Apfel*, 2000 WL 1449887, at *5 n. 3 (E.D.La.2000) (citing multiple court opinions that a low IQ score raises presumption of manifestation during the developmental period). Moreover, as the Fourth Circuit has noted, simply because a person was not tested during the developmental stage does not mean that person was *not* retarded at that time. *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir.1985). "[T]here may be many reasons why an individual would not have had the opportunity or need to have a formal intelligence quotient test until later in life. The fact that one was not earlier taken does not preclude a finding of earlier retardation." *Id.* The Fifth Circuit has not directly ruled on the issue, but "it has considered whether a defendant was mentally retarded in other contexts, relying on I.Q. testing that took place after the defendant reached the relevant age." *Durden*, 586 F.Supp.2d at 834, citing *Morris v. Dretke*, 413 F.3d 484, 487 (5th Cir.2005) (IQ scores obtained after the defendant was eighteen in analyzing whether he had manifested significantly subaverage intellectual functioning before that age).

Dr. Ellis specifically found, "There was no significant intratest scatter between the scale scores as she was relatively low in all areas. . . . It is felt that these results are a valid reflection

of her current level of functioning." Tr. 161-62. Despite the ALJ's evaluation of plaintiff's credibility, and despite the fact that plaintiff had worked at jobs that did not require a high level of functioning, Listing 12.05(b) would mandate a finding of "Disabled" without considering those factors if the IQ scores obtained by Dr. Ellis are found to be valid and the presumption that those scores would have been the same if plaintiff had been tested before attaining age 22 is applied. Because the ALJ did not have an opportunity to consider the later-obtained IQ scores and Dr. Ellis's evaluation of plaintiff's capabilities, and because his analysis could be altered in light of that evidence, the evidence is "material" and the case should be remanded to the ALJ for further consideration of whether plaintiff meets either Listing 12.05(B) or 12.05(C).

## **CONCLUSION**

The decision of the Commissioner is reversed, and the case is remanded for further consideration by the ALJ in light of this opinion. A separate judgment will be entered as required by F.R.Civ.P. 58(a).

THIS, the 27th day of July, 2010.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE